# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2013-CC-02117-COA

**MISSISSIPPI DEPARTMENT OF EMPLOYMENT SECURITY**                                    **APPELLANT**

**v.**

**JACKSON COUNTY, MISSISSIPPI**                                    **APPELLEE**

| | |
|---|---|
| DATE OF JUDGMENT: | 11/14/2013 |
| TRIAL JUDGE: | HON. MICHAEL H. WARD |
| COURT FROM WHICH APPEALED: | JACKSON COUNTY CIRCUIT COURT |
| ATTORNEYS FOR APPELLANT: | LEANNE F. BRADY |
| | ALBERT B. WHITE |
| ATTORNEY FOR APPELLEE: | RYAN A. FREDERIC |
| NATURE OF THE CASE: | CIVIL - STATE BOARDS AND AGENCIES |
| TRIAL COURT DISPOSITION: | REVERSED DECISION OF MISSISSIPPI DEPARTMENT OF EMPLOYMENT SECURITY BOARD OF REVIEW |
| DISPOSITION: | AFFIRMED - 06/09/2015 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**BEFORE IRVING, P.J., ISHEE AND CARLTON, JJ.**

**ISHEE, J., FOR THE COURT:**

¶1.     Patrick Arroyo was employed by Jackson County, Mississippi, as the drug-court coordinator for approximately eight months until he resigned in August 2012. Shortly thereafter, he filed for unemployment benefits with the Mississippi Department of Employment Security (MDES). An investigation resulted in a denial of the benefits based on the conclusion that Arroyo left his employment for personal reasons. Arroyo appealed the denial, and, after hearing testimony and evidence, an administrative judge (AJ) determined

that Arroyo had committed misconduct that disqualified him from receiving the benefits. Arroyo appealed the AJ's decision to the MDES Board of Review, which reversed the AJ's judgment. The Board instead found that sufficient evidence was not presented to prove that Arroyo committed disqualifying misconduct. Jackson County then appealed the Board's decision to the Jackson County Circuit Court. Special Judge Michael H. Ward was appointed to the case, and reversed the Board's judgment on November 11, 2013. Aggrieved, MDES appeals. Finding no error, we affirm.

## STATEMENT OF FACTS

¶2. In 2012, Arroyo worked as the coordinator for the drug-court program in Jackson County. As part of his employment, he was prohibited from using any intoxicating substance at work, including prescribed narcotics. The policy against drug use was clearly communicated to Arroyo. By his own admission, both verbally and in written form, Arroyo acknowledged that he was aware of the policy at all relevant times.

¶3. Following a random drug screen of drug-court employees, Arroyo tested positive for Xanax, an anti-anxiety medication. Arroyo admitted that he had a prescription for Xanax, but that he was taking the drug for a purpose other than its intended use. Due to Arroyo's history as a drug user and his position as the drug-court coordinator, he was counseled regarding the problem and issued a warning from his superiors.

¶4. Several months later, Arroyo underwent a second random drug screen. The results were inconclusive. However, possible Lortab usage was indicated. Again, Arroyo completed counseling sessions, during which he was warned that he was not permitted to

take narcotics. The record indicates that Arroyo was given an ultimatum during the counseling sessions that he would be terminated the next time he tested positive for any drug usage.

¶5.    In August 2012, Arroyo asserted that he was experiencing back pain and was prescribed Lortab, a controlled narcotic, for the pain. On August 17, 2012, he filled the prescription and took half of a tablet of Lortab. During a meeting that morning, Arroyo showed his supervisor, Jackson County Circuit Court Judge Robert Krebs, and a staff attorney, Tommy Laws, his prescription and admitted that he had taken one of the tablets. Judge Krebs conveyed to Arroyo in no uncertain terms that narcotic usage of any kind was not allowed and that Arroyo would not be permitted to take the narcotic and continue in his employment as the drug-court coordinator. Judge Krebs told Arroyo that if the narcotic usage continued, Arroyo would either have to resign or be terminated.

¶6.    On August 24, 2012, Judge Krebs called Arroyo and Laws into a meeting regarding a separate and unrelated work incident involving Arroyo. Judge Krebs informed Arroyo that due to his poor job performance and his continued drug usage, he would no longer be allowed to work as the drug-court coordinator. Judge Krebs then gave Arroyo the option of resigning or being terminated. Arroyo issued two handwritten letters effecting his resignation that day.

¶7.    Shortly thereafter, Arroyo filed for unemployment benefits with MDES. MDES assigned a claims examiner to the case to determine if Arroyo was eligible for the benefits. An investigation ensued, and Arroyo was eventually denied the benefits. The claims

3

examiner determined that Arroyo resigned from his position due to personal reasons, thereby disqualifying him from obtaining unemployment benefits. Arroyo appealed the decision to MDES.

¶8. Several telephonic hearings then took place with the assigned AJ, after which time the AJ affirmed the initial MDES decision denying Arroyo benefits. Aggrieved, Arroyo appealed to the Board. Although Arroyo technically resigned, the Board deemed the circumstances a constructive discharge, and evaluated it in terms of whether or not Arroyo was discharged based on misconduct. Ultimately, the Board found that Jackson County had not met its burden of proving that Arroyo committed misconduct. The Board concluded that although taking the narcotic was against Jackson County's policy, the act did not rise to the level of misconduct. Hence, the AJ's ruling was reversed, and Arroyo was awarded benefits.

¶9. Jackson County appealed the Board's decision to the circuit court. Due to the close proximity of Judge Krebs to the case, the Mississippi Supreme Court assigned Judge Ward as a special judge. After both parties filed briefs on the issues, Judge Ward reversed the Board's decision and reinstated the AJ's decision denying Arroyo benefits. MDES now appeals.

**DISCUSSION**

¶10. We employ an abuse-of-discretion standard when reviewing a trial court's decision to affirm or reverse an administrative agency's findings. *McGee v. Miss. Emp't Sec. Comm'n*, 876 So. 2d 425, 427 (¶5) (Miss. Ct. App. 2004) (citation omitted). We must "review the record to determine whether there is substantial evidence to support the

4

Board['s] . . . findings of fact, and further, whether, as a matter of law, the employee's actions constituted misconduct disqualifying him from eligibility for unemployment compensation." *Miss. Emp't Sec. Comm'n v. Berry*, 811 So. 2d 298, 301 (¶8) (Miss. Ct. App. 2001) (citing *City of Clarksdale v. Miss. Emp't Sec. Comm'n*, 699 So. 2d 578, 580 (¶15) (Miss. 1997)).

¶11.    The supreme court defined "misconduct" in *Wheeler v. Arriola*, 408 So. 2d 1381, 1383 (Miss. 1982), as:

> [C]onduct evincing such willful and wanton disregard of the employer's interest as is found in deliberate violations or disregard of standards of behavior which the employer has the right to expect from his employee. Also, carelessness and negligence of such degree, or recurrence thereof, as to manifest culpability, wrongful intent or evil design, and showing an intentional or substantial disregard of the employer's interest or of the employee's duties and obligations to his employer, [come] within the term. Mere inefficiency, unsatisfactory conduct, failure in good performance as the result of inability or incapacity, or inadvertences and ordinary negligence in isolated incidents and good faith errors in judgment or discretion [are] not considered "misconduct."

*Id.* (citation omitted). Moreover, "repeated neglect of an employer's interests may rise to the dignity of misconduct." *Miss. Emp't Sec. Comm'n v. Phillips*, 562 So. 2d 115, 118 (Miss. 1990).

¶12.    Additionally, the supreme court has addressed the proper analysis of a claimant's eligibility for unemployment benefits when possible misconduct is at issue. *See Johnson v. Miss. Emp't Sec. Comm'n*, 761 So. 2d 861, 866 (¶19) (Miss. 2000); *Halbert v. City of Columbus*, 722 So. 2d 522, 526-27 (¶¶18-21) (Miss. 1998). Put simply, "numerous cases . . . support the position that misconduct occurs . . . where an employer establishes an

5

applicable policy and standard of behavior, the standard is communicated to its employees, and the employee violates these policies." *Johnson*, 761 So. 2d at 866 (¶19) (citations omitted).

¶13.    Here, we cannot find that the circuit court abused its discretion in overturning the Board's decision.  It is clear that Jackson County's policy prohibiting Arroyo, as the drug-court coordinator, from using narcotics was aptly conveyed to Arroyo.  Arroyo admits that he was aware of the policy both prior to and during his employment as the drug-court coordinator.  Nonetheless, after being cautioned on two prior occasions regarding his drug usage, Arroyo continued to use a prescribed narcotic and even presented the narcotic to his employer.  When given the choice between ceasing the drug usage and keeping his job or continuing the drug usage and losing his job, Arroyo chose the latter.  His repeated actions flew in the face of his employer's policy, and yet he continued to use the prescribed narcotic.  Hence, we cannot find fault in the circuit court's determination that Arroyo committed disqualifying misconduct.  This issue is without merit.

¶14.    **THE JUDGMENT OF THE JACKSON COUNTY CIRCUIT COURT IS AFFIRMED.   ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANT.**

**LEE, C.J., IRVING AND GRIFFIS, P.JJ., BARNES, CARLTON, MAXWELL AND FAIR,  JJ., CONCUR.  ROBERTS, J., CONCURS IN PART AND IN THE RESULT WITHOUT SEPARATE WRITTEN OPINION.  JAMES, J., DISSENTS WITHOUT SEPARATE WRITTEN OPINION.**