## IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2014-CC-01445-COA

**FRANKLIN COLLECTION SERVICE, INC.**                    **APPELLANT**

**v.**

**MISSISSIPPI DEPARTMENT OF**                    **APPELLEES**
**EMPLOYMENT SECURITY AND ELIZABETH**
**THOMAS**

| | |
|---|---|
| DATE OF JUDGMENT: | 09/04/2014 |
| TRIAL JUDGE: | HON. JAMES LAMAR ROBERTS JR. |
| COURT FROM WHICH APPEALED: | LEE COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANT: | MICHAEL D. CHASE |
| ATTORNEYS FOR APPELLEES: | ALBERT B. WHITE |
| | LEANNE FRANKLIN BRADY |
| | ELIZABETH THOMAS (PRO SE) |
| NATURE OF THE CASE: | CIVIL - STATE BOARDS AND AGENCIES |
| TRIAL COURT DISPOSITION: | AFFIRMED DECISION OF THE MISSISSIPPI DEPARTMENT OF EMPLOYMENT SECURITY'S BOARD OF REVIEW |
| DISPOSITION: | AFFIRMED - 12/15/2015 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**BEFORE GRIFFIS, P.J., MAXWELL AND JAMES, JJ.**

**MAXWELL, J., FOR THE COURT:**

¶1. When the Mississippi Department of Employment Security's Board of Review

justifies its factual findings with evidence, those findings *shall be conclusive*.[1]  And when

the Board's factual findings are conclusive, our appellate review focuses solely on questions

---

[1] *Jackson Cnty. Bd. of Sup'rs v. Miss. Emp't Sec. Comm'n*, 129 So. 3d 178, 183 (¶13) (Miss. 2013) (citing Miss. Code Ann. § 71-5-531 (Rev. 2011)).

of law.[2]

¶2.     In this unemployment-benefits case, the Board found Franklin Collection Services, Inc. employee Elizabeth Thomas's productivity was low, so Franklin was justified in terminating Thomas.  But the Board found Thomas's low productivity did not amount to misconduct.  So she was not disqualified from receiving unemployment benefits.

¶3.     After review, we find the Board supported its decision that Thomas did not commit disqualifying misconduct with substantial evidence.  Because of this conclusive finding, our review is strictly limited to deciding whether the Board used the correct legal standard for determining employee misconduct.  After review, we find it did.  Therefore, we affirm.

### Background Facts and Procedural History

### I.     Thomas's Employment with Franklin

¶4.     Thomas started working at Franklin in April 2012.  She was originally hired as a collector.  But when this position proved too difficult for her, rather then terminating Thomas, Franklin demoted her to "sorter."  As a sorter, Thomas was tasked with calling debtors.  And when she got a debtor on the line, she was to transfer the debtor to a collector.  Thomas was expected to make twenty-five transfers a day.  She was also supposed to write 100 collection letters, which the company referred to as "GZs."[3]

¶5.     According to Franklin, Thomas was not keeping up with this schedule, prompting a

---

[2] *Id.*

[3] Apparently, "GZ" is not short for anything.  Rather, it is simply what Franklin calls this type of correspondence.

written warning in April 2013.  Then, in July 2013, there were several days where Thomas transferred little to no calls to collectors and wrote a scant amount of GZs.  After giving Thomas a verbal warning at the beginning of the week, Franklin terminated her on Friday, July 26, citing her "lack of production" and failure "to turn the situation around."

¶6.     Thomas sought unemployment benefits from the Mississippi Department of Employment Security (MDES).  Initially, MDES deemed her disqualified to receive benefits because she had been discharged due to misconduct connected with work.  *See* Miss. Code Ann. § 71-5-513(A)(1)(b) (Supp. 2015).[4]

## II.     Administrative Hearing

¶7.     Thomas appealed and was granted a telephonic administrative hearing.  At this hearing, Julie Johnson, vice-president of portfolio management, testified for Franklin. Johnson was the one who had told Thomas she was fired.  According to Johnson, Thomas "was not doing anything during work."  Thomas had established a pattern of being paid for eight hours of work, when she only worked two to three hours during her shift.  For example, on July 9, Thomas only worked on eight accounts.  And on July 25, Thomas clocked in nine

---

[4] Under section 71-5-513(A)(1)(b):

An individual shall be disqualified for benefits . . . [f]or the week, or fraction thereof, which immediately follows the day on which he was discharged for misconduct connected with his work, if so found by the department, and for each week thereafter until he has earned remuneration for personal services performed for an employer, as in this chapter defined, equal to not less than eight (8) times his weekly benefit amount, as determined in each case.

hours, but only spent 3.7 "on the dialer," trying to call debtors. When asked by the administrative judge (AJ) what Thomas was doing instead, Johnson said Thomas was at her work station, but there was "a lot of talking going on." Johnson said she had tried to talk to Thomas about "wasting a lot of time" at work.

¶8. Thomas also testified. She admitted she had been discharged for not keeping up with production—and that Franklin had talked to her about it. But Thomas pointed out most of the corrective-action forms in her employment file stemmed from her past job as a collector. Thomas had only been given one written warning as a sorter. Thomas told the AJ, "I felt like I did my job." Thomas explained that, if she was not on the dialer, she was writing GZs. Thomas admitted there were days when she only transferred one or two calls. But she said there had been problems with wrong phone numbers and disconnected phone lines. Thomas remembered just one day when she wrote only fifty GZs—but her time was spent updating accounts that day. Thomas claimed she was not the only employee who struggled with low production. So it was unfair that Franklin singled her out.

¶9. The AJ asked Thomas about talking during work. Thomas insisted Franklin had a social atmosphere where employees sat together. And there were no rules prohibiting talking. Thomas impressed on the AJ that she had tried to be a good employee. She felt she did her job to the best of her ability.

¶10. In rebuttal, Johnson pointed out Franklin would have credited Thomas for calling a number that had been disconnected. She closed by saying Thomas had been fired because

4

of her "unwillingness to do her job."

¶11.    After this hearing, the AJ issued an opinion awarding Thomas benefits. Franklin had proved Thomas failed to meet her quotas, justifying her termination. But that is all it proved—low productivity. Beyond showing Thomas "may have socialized too much," Franklin had no evidence Thomas's low productivity was accompanied by the type of willful or wanton acts or omissions necessary to meet the definition of "misconduct." *See Wheeler v. Arriola*, 408 So. 2d 1381, 1383 (Miss. 1982).

### III.    Appeals

¶12.    Franklin appealed to MDES's Board of Review. After review, the Board adopted the AJ's findings of facts and opinion. Franklin then appealed to the Lee County Circuit Court, which affirmed the Board's decision. Franklin now appeals to this court, challenging the Board's finding that Thomas was not discharged for misconduct connected to her work.

### Discussion

### I.    Review of an Agency Decision

¶13.    Franklin faces an uphill battle on appeal. "[A] rebuttable presumption exists in favor of the administrative agency[,]" so Franklin "has the burden of proving otherwise." *Jackson Cnty. Bd. of Sup'rs v. Miss. Emp't Sec. Comm'n*, 129 So. 3d 178, 183 (¶13) (Miss. 2013) (quoting *Miss. Emp't Sec. Comm'n v. Harris*, 672 So. 2d 739, 743 (Miss. 1996)). "All levels

5

of judicial review focus on the decision of the [MDES[5]] Board of Review, as that is the final decision of the agency." *Id.* (citing Miss. Code Ann. § 71-5-531 (Supp. 2015)). "[T]he findings of the Board of Review as to the facts, if supported by evidence and in the absence of fraud, shall be conclusive, and the jurisdiction of said court shall be confined to questions of law." *Id.*

## II. Finding of Fact, Not Question of Law

¶14. With this standard in mind, Franklin frames its first argument as a question of law. It argues the Board made a legal error by concluding low productivity cannot be considered disqualifying misconduct, even when such low productivity resulted from a lack of effort. However, this argument assumes Franklin *proved* Thomas's low productivity resulted from her lack of effort. But this is *not* what the Board found.

¶15. In her findings of fact, which the Board adopted, the AJ did find Thomas failed to meet her required quotas. But the AJ did not find Thomas's failures were attributable to a lack of effort. At most, Franklin had proven Thomas "may have socialized too much." But the AJ found this evidence was insufficient to prove willful and wanton behavior rising to the level of misconduct, as defined in *Wheeler*, 408 So. 2d at 1383.

¶16. According to *Wheeler*, "[m]ere inefficiency, unsatisfactory conduct, failure in good performance as the result of inability or incapacity, or inadvertences and ordinary negligence

---

[5] The Mississippi Department of Employment Security was formerly known as the Mississippi Employment Security Commission and is often still referred to by that name.

6

in isolated incidents, and good faith errors in judgment or discretion [are] not considered 'misconduct' within the meaning of the statute." *Id.*; *see, e.g.*, *Miss. Emp't Sec. Comm'n v. Johnson*, 9 So. 3d 1170, 1174 (¶11) (Miss. Ct. App. 2009) (finding a receptionist's "failure to complete [her] work projects [was] the result of simple inability, inefficiency, lack of training, and/or inexperience"—not misconduct). Instead, "misconduct" is "conduct evincing such willful and wanton disregard of the employer's interest as is found in deliberate violations or disregard of standards of behavior which the employer has the right to expect from his employee." *Wheeler*, 408 So. 2d at 1383; *see e.g.*, *Reeves v. Miss. Emp't Sec. Comm'n*, 806 So. 2d 1178, 1179 (¶7) (Miss. Ct. App. 2002) (finding a metal fabricator who refused to clean up parts he burnt, after being expressly asked to do so by his supervisor, was terminated for misconduct). "[C]arelessness and negligence of such degree, or recurrence thereof, as to manifest culpability, wrongful intent or evil design, and showing an intentional or substantial disregard of the employer's interest or of the employee's duties and obligations to his employer . . . [also fall] within the term." *Id.*

¶17.   In concluding Thomas was not terminated for misconduct, the AJ and Board applied the correct legal definition of misconduct. But the AJ and Board simply found, as a *factual* matter, Franklin failed to meet its "burden of proving misconduct by substantial, clear, and convincing evidence." *Jackson Cnty. Bd. of Sup'rs*, 129 So. 3d at 183 (¶12) (citing Miss. Code Ann. § 71-5-513(A)(1)(c); *Foster v. Miss. Emp't Sec. Comm'n*, 632 So. 2d 926, 927

(Miss. 1994)).[6] So Franklin's real problem with the Board's decision has to do with its finding of fact, not its conclusion of law.

### III. Substantial Evidence Supporting the Board's Decision

¶18. Mississippi law directs we approach this finding of fact deferentially. "Under our standard of review, even if there is evidence which would have supported a different result, we will not disturb a decision of the [Board] that is supported by substantial evidence." *Id.* at 184 (¶16).

¶19. While perhaps not quite as clear and convincing as Franklin suggests, we do recognize Franklin presented evidence supporting its position that Thomas willfully disregarded her employer's interest by not doing her job. *But* Thomas countered Franklin's evidence. She testified she had always worked to the best of her ability, and factors outside of her control had contributed to her missing her quotas. And the Board was obviously swayed to some

---

[6] On appeal, Franklin contends the employer's evidentiary burden should be downgraded from clear and convincing evidence of misconduct to a mere preponderance because section 71-5-513(A)(1)(c) is silent about the matter. But our supreme court has been clear and consistent on this issue for a quarter century. In 1989, the supreme court, keeping in mind the public policy of Mississippi's unemployment-benefits statutes, held "that in unemployment compensation cases, the employer bears the burden to prove by substantial, clear, and convincing evidence that a former employee's conduct warrants disqualification of benefits." *Shannon Eng'g & Constr., Inc. v. Miss. Emp't Sec. Comm'n*, 549 So. 2d 446, 450 (Miss. 1989). And even after subsection (A)(1)(c) was added to section 71-5-513, the supreme court has not waivered from this standard. As recently as 2013, the supreme court reiterated "[t]he employer bears the burden of proving misconduct by substantial, clear, and convincing evidence[,]" which "requires proof beyond a mere preponderance of the evidence." *Jackson Cnty. Bd. of Sup'rs*, 129 So. 3d at 183 (¶12) (citing *Shannon Eng'g & Const.*, 549 So. 2d at 450 n.1).

extent by her testimony.

¶20. While we certainly may have weighed this evidence differently than the Board, our role is not to reevaluate the evidence to ask if Thomas's low productivity resulted from misconduct. *See id*. at 183-84 (¶¶15-16). Rather, we ask—Is the Board's finding of no misconduct supported by substantial evidence? *See id*. And after review, we find it is. The Board supported its decision with substantial evidence, namely, the testimony of Thomas, whose credibility was a matter for the Board—not this court—to decide. *See id*. at 183 (¶15). And "[w]here there is substantial evidence, an agency's fact finding must be allowed to stand even though there might be room for disagreement on that issue." *Id.* (citations omitted).

¶21. "An employee's conduct may constitute grounds for termination, yet be insufficient to constitute misconduct disqualifying the claimant from unemployment benefits." *Id.* at (¶11). The Board found Thomas's low production justified termination—but not disqualification from unemployment benefits. As the Board supported its decision with substantial evidence, we must defer to this decision as conclusive.

## IV. No Violation of a Uniformly Enforced Rule

¶22. Franklin alternatively argues the Board erred in applying the "uniformly enforced rule" principle. Violating an employer's rule, which is known (actually or constructively), reasonably related to the job, and fairly and consistently enforced, is another way for an employee to commit disqualifying conduct under section 71-5-513(A)(1)(b). *See* MDES Reg. 308.00.

9

¶23. In her decision, the AJ found Franklin presented "no evidence of a violation of a uniformly enforced rule." While Johnson had "indicated that [Thomas] may have socialized too much," Franklin had "no rule against talking and all of they employees talked while they worked." On appeal, Franklin agrees, insisting "it did not terminate Ms. Thomas for disobeying a rule, but rather for failing to perform the duties for which she was hired." So we fail to see how the Board could have possibly erred in agreeing with the AJ—*and Franklin*—that there was no evidence Thomas was discharged for violating an employer rule.

¶24. **THE JUDGMENT OF THE LEE COUNTY CIRCUIT COURT IS AFFIRMED.**

**LEE, C.J., IRVING AND GRIFFIS, P.JJ., ISHEE, CARLTON, FAIR, JAMES AND WILSON, JJ., CONCUR. BARNES, J., NOT PARTICIPATING.**