## IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2017-CC-01598-COA

COLUMBUS LIGHT & WATER DEPARTMENT                    APPELLANT

v.

MISSISSIPPI DEPARTMENT OF                                    APPELLEE
EMPLOYMENT SECURITY

| | |
|---|---|
| DATE OF JUDGMENT: | 09/14/2017 |
| TRIAL JUDGE: | HON. LEE J. HOWARD |
| COURT FROM WHICH APPEALED: | LOWNDES COUNTY CIRCUIT COURT |
| ATTORNEYS FOR APPELLANT: | JEFFREY CARTER SMITH |
| | COURTNEY BRADFORD SMITH |
| ATTORNEYS FOR APPELLEE: | ALBERT B. WHITE |
| | JAMES RANDALL BUSH |
| NATURE OF THE CASE: | CIVIL - STATE BOARDS AND AGENCIES |
| DISPOSITION: | AFFIRMED: 03/19/2019 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**EN BANC.**

**TINDELL, J., FOR THE COURT**:

¶1.     Columbus Light & Water Department (Columbus LW) appeals the judgment of the Lowndes County Circuit Court's affirmation of the Mississippi Department of Employment Security's Board of Review's (Board) opinion that a terminated employee was entitled to unemployment benefits.  On appeal, Columbus LW claims the Board's decision was not based on substantial evidence and amounted to an arbitrary and capricious decision.  After review, we find no error and affirm the circuit court's judgment.

## FACTS

¶2.     Teresa Darby (Darby) was employed by Columbus LW beginning in May 2010.

Darby worked for Columbus LW as a payroll clerk with the added duty of assisting as a backup teller. Columbus LW terminated Darby's employment on May 5, 2016, for multiple violations, including: dishonesty, insubordination, unauthorized use of company records, and multiple violations of Columbus LW's internet-use policy. The handbook listed the most serious misconduct violations to be: (1) "[e]ngag[ement] in acts of dishonesty of any type," (2) insubordination, and (3) unauthorized possession of or removal of "any [Columbus LW] property or record . . . of any . . . employee."

¶3. On one occasion, a Columbus LW supervisor asked Darby if while working at a teller's desk as a cashier, on April 8, she loaded five days of payroll. Darby twice denied loading the payroll information on that date. Yet, Darby had, in fact, loaded the payroll information. Columbus LW considered her two denials to be examples of dishonesty and insubordination. On another occasion, Darby sent an email from her home to her work address that contained a list of overtime hours for Columbus LW employees. Darby downloaded employee overtime hours, employee identities, social security numbers, salary information, and bank account numbers from a company computer onto a flash or jump drive. Columbus LW required such personal information to be kept in the office. Because this information was downloaded onto Darby's home computer, Columbus LW considered that action to be a violation of company policy regarding company payroll records. Additionally, Columbus LW investigated Darby's internet usage at work and found, among other things: 30 minutes of news, 30 minutes researching Bible quotes, 30 minutes shopping at Walgreens, 15 minutes personal banking, 10 minutes Fitbit, and 10 minutes of Dr. Oz.

Columbus LW found that the internet use together with the use of the employee information on a flash drive violated company policy regarding the extent and use of the internet and external devices.

¶4. Columbus LW's comptroller, Mr. Bernsen, testified that Darby was the only payroll clerk and that Darby had been asking for help entering payroll. He testified that she was unhappy about having to work as a backup teller in addition to payroll. He prompted an investigation into her efficiency and found that Darby did not need help entering payroll and had plenty of time to enter payroll herself without help. When she denied entering payroll information while working as a teller, Bernsen saw that as an attempt to get help that was unneeded.

¶5. Darby recalled the question regarding payroll differently. She agreed that when asked if she was working on payroll, she answered, "no." However, as she explained, she answered that way because she was not at her desk at all that day and had been working as a teller up front instead. She explained that when she was not busy working as a cashier/teller, she tried to get some payroll time keyed in while at the front.

¶6. Darby admitted to times when she barely completed her payroll and other duties on time. She testified she would work through her breaks and at lunch to get the work completed. Columbus LW's payroll program required importing time into the system through an Excel spreadsheet. Thus, regarding the occasion when she brought home employee information, she admitted to bringing home the spreadsheet, keying in payroll time at home, and emailing the spreadsheet back to herself at Columbus LW. She stated that

because Columbus LW was not going to give her any help, she had to take that work home to get the job done on time. She claimed to be unaware that it was forbidden for her to do the work at home.

¶7. When Darby first started at Columbus LW, her computer crashed, and multiple documents she set up to make her payroll job more efficient were lost. She asked her supervisor at that time if there were any computer backups for the local drives and was told, "no." On that occasion, she had to recreate what she approximated to be a year's worth of documents. She asked her supervisor for a CD to use as a backup for those documents, and her supervisor provided her with a CD for that purpose. Over the six years she worked for Columbus LW, the backup CD evolved into a backup flash drive. Darby would put the flash drive in her purse to take home as a backup in case there was a fire in the building. Darby claimed that Michelle Butler, her supervisor, was aware she was using the flash drive as a backup and that Butler had seen Darby put it in her purse to take home. Butler never told Darby those actions were prohibited.

¶8. Darby admitted to web browsing from time to time during work. She also admitted that, per the handbook, web browsing was strictly prohibited. The actual handbook wording regarding internet use reads, "Minimal personal use of the Internet, e-mail[,] and voice mail systems is permitted." Her only defense, as she stated at the hearing, was "everybody up there did it, including my supervisor." Then, she gave an example and named an upper-management employee who was caught observing pornography on an open company computer during work hours. She noted that nothing was done to that employee for the

4

violation. Prior to being terminated, Darby had not personally been warned about her personal use of the internet at work.

¶9. After her termination from Columbus LW, Darby applied for unemployment benefits from the Mississippi Department of Employment Security (MDES). MDES's initial investigation hearing officer found the reason for Darby's discharge was actions and omissions considered misconduct under Mississippi Code Annotated section 71-5-513(A)(1)(b) (Rev. 2010) and denied her unemployment benefits. Darby disagreed with the conclusion of this initial investigation and appealed. MDES held a telephone appeal hearing on June 20, 2016, in which Darby and Columbus LW participated. The administrative-law judge (AJ) found in favor of Darby on her appeal and reversed the MDES decision, finding Darby eligible to receive unemployment benefits. Thereafter, Columbus LW appealed to the Board. In a July 26, 2016 decision, the Board adopted the findings of fact and opinion earlier entered by the AJ and affirmed the decision.

¶10. In August 2016, Columbus LW appealed the Board's decision to the circuit court. The circuit court reviewed the record and briefs, found the Board's decision to be supported by substantial evidence and law, and affirmed the Board's decision on September 14, 2017. Thereafter, Columbus LW filed its notice of appeal.

¶11. Columbus LW now appeals to this Court, asserting that: (1) the circuit court erred in affirming the Board's arbitrary and capricious ruling; and (2) the circuit court erred in finding substantial evidence supported the Board's decision. Columbus LW asks this Court to reverse the Board's previous findings and deny Darby unemployment compensation.

**STANDARD OF REVIEW**

¶12.    A person is disqualified from receiving unemployment benefits if "[she] was discharged for misconduct connected with [her] work, if so found by [MDES]." Miss. Code Ann. § 71-5-513(A)(1)(b).  The Mississippi Supreme Court has defined "misconduct" as

> conduct evincing such willful and wanton disregard of the employer's interest as is found in deliberate violations or disregard of standards of behavior which the employer has the right to expect from his employee.  Also, carelessness and negligence of such degree, or recurrence thereof, as to manifest culpability, wrongful intent[,] or evil design, and showing an intentional or substantial disregard of the employer's interest or of the employee's duties and obligations to his employer, [come] within the term.

*Wheeler v. Arriola*, 408 So. 2d 1381, 1383 (Miss. 1982) (brackets omitted).  However, "[m]ere inefficiency, unsatisfactory conduct, failure in good performance as the result of inability or incapacity, or [inadvertencies] and ordinary negligence in isolated incidents, and good[-]faith errors in judgment or discretion [are] not considered 'misconduct' within the meaning of the statute." *Id*.  The underlying purpose of Mississippi's employment security law is to protect workers not permitted to continue employment through no fault of their own. *Sprouse v. Miss. Emp't Sec. Comm'n*, 639 So. 2d 901, 902 (Miss. 1994).  "The employer bears the burden of proving misconduct by substantial, clear, and convincing evidence." *Kidd v. Miss. Dep't of Emp't Sec.*, 202 So. 3d 1283, 1285 (¶6) (Miss. Ct. App. 2016); *Jackson Cty. Bd. of Supervisors v. Miss. Emp't Sec. Comm'n*, 129 So. 3d 178, 183 (¶12) (Miss. 2013).

¶13.    This appeal is governed by the very high standard found in Mississippi Code Annotated section 71-5-531 (Rev. 2010), which provides that the Board's opinion regarding

6

findings of fact is conclusive in the absence of fraud and if supported by evidence. *Id*.; *Miss. Dep't of Emp't Sec. v. Harbin*, 11 So. 3d 137, 139 (¶5) (Miss. Ct. App. 2009). A rebuttable presumption exists in favor of the administrative agency, and the challenging party has the burden of proving otherwise. *Miss. Dep't of Emp't Sec. v. Good Samaritan Pers. Servs.*, 996 So. 2d 809, 812 (¶6) (Miss. Ct. App. 2008) (quoting *Sprouse*, 639 So. 2d at 902). "This Court must not reweigh the facts of the case or insert its judgment for that of the administrative agency." *Allen v. Miss. Emp't Sec. Comm'n*, 639 So. 2d 904, 906 (Miss. 1994) (citation omitted).

## ANALYSIS

¶14. We are tasked, in this appeal, with reviewing an administrative agency's decision. Because "a rebuttable presumption exists in favor of the administrative agency[,]" Columbus LW faces an uphill battle. *See Franklin Collection Serv. Inc. v. Miss. Dep't of Emp't Sec.*, 181 So. 3d 304, 307 (¶13) (Miss. Ct. App. 2015). "The findings of the Board . . . as to the facts, if supported by evidence and in the absence of fraud, shall be conclusive, and the jurisdiction of [this] court shall be confined to questions of law." Miss. Code Ann. § 71-5-531.

¶15. The issues as stated by Columbus LW are: (1) "the [c]ircuit [c]ourt err[ed] in affirming the arbitrary and capricious ruling of the MDES"; and (2) "the [c]ircuit [c]ourt [erred in] affirm[ing] the MDES ruling without substantial evidence." The strict and high standard of review set forth by section 71-5-531 severely limits this Court's power to consider Columbus LW's arguments, let alone reverse, modify, or remand the case. *Id*.

7

"Under our standard of review, even if there is evidence which would have supported a different result, we will not disturb a decision of the Board that is supported by substantial evidence." *Franklin Collection Serv. Inc.*, 181 So. 3d at 309 (¶18) (quoting *Jackson Cty. Bd. of Supervisors*, 129 So. 3d at 184 (¶16)).

¶16. Keeping in mind our standard of review, we find the Board's decision was not arbitrary or capricious and was based on substantial evidence. While it may not have been how this Court would have ruled on the Board-provided facts, we are not empowered to reweigh the facts and substitute our opinion for that of the Board. *Pub. Emps' Ret. Sys. v. Howard,* 905 So. 2d 1279, 1285 (¶15) (Miss. 2005). Our analysis of this case and this appeal closely aligns with our analysis in *Franklin Collection Service Inc.* Bound by the high standard of review, our role here, as there, "is not to reevaluate the evidence to ask" if Darby's termination resulted from misconduct. *Franklin Collection Serv. Inc.*, 181 So. 3d at 309 (¶20). And here, the Board supported its decision with substantial evidence in the form of Darby's testimony.

¶17. Darby testified she had not intentionally lied to her supervisors at Columbus LW about payroll but had simply misunderstood the questions. She testified that she entered payroll while performing other duties, on her breaks, at lunch, and at home in an attempt to complete the payroll in a timely manner. Darby brought home company information, she testified, only to protect the information and spreadsheets and to timely complete her work. Further, Darby claimed her internet use was neither unusual among Columbus LW employees nor as concerning as a known incident of past internet abuse by a supervisor at work.

8

¶18. "Where there is substantial evidence, an agency's fact finding must be allowed to stand even though there might be room for disagreement on that issue." *Jackson Cty. Bd. of Supervisors*, 129 So. 3d at 183 (¶15). Because the Board supported its decision with substantial evidence, we cannot say the decision was either arbitrary or capricious, and we affirm the Board's decision.

¶19. **AFFIRMED.**

**BARNES, C.J., CARLTON AND J. WILSON, P.JJ., GREENLEE, WESTBROOKS, McDONALD, LAWRENCE, McCARTY AND C. WILSON, JJ., CONCUR.**