# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2021-CC-00574-COA

**VECTOR TRANSPORTATION CO.**                                                            **APPELLANT**

**v.**

**MISSISSIPPI DEPARTMENT OF**                                                    **APPELLEES**
**EMPLOYMENT SECURITY AND SCOTT**
**BLACK**

| | |
|---|---|
| DATE OF JUDGMENT: | 04/26/2021 |
| TRIAL JUDGE: | HON. MICHAEL PAUL MILLS JR. |
| COURT FROM WHICH APPEALED: | LEE COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANT: | MARGARET SAMS GRATZ |
| ATTORNEY FOR APPELLEES: | ALBERT B. WHITE |
| NATURE OF THE CASE: | CIVIL - STATE BOARDS AND AGENCIES |
| DISPOSITION: | AFFIRMED - 08/16/2022 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**BEFORE CARLTON, P.J., McDONALD AND EMFINGER, JJ.**

**EMFINGER, J., FOR THE COURT:**

¶1.     Vector Transportation Co. (Vector) appeals from the Lee County Circuit Court's judgment affirming the Mississippi Department of Employment Security (MDES) Board of Review's finding that Scott Black was entitled to unemployment benefits as a result of his termination by Vector. The Board of Review adopted the administrative law judge's finding that Vector failed to prove that Black was discharged for misconduct as "that term is defined under the Law." Finding no error, we affirm.

## FACTS AND PROCEDURAL HISTORY

¶2.     Vector hired Black for its shipper support division on January 21, 2019. Vector is "a

freight brokerage company that offers freight services to businesses throughout the United States and Canada" and "acts as a middle man in the transportation process and uniquely matches the transportation needs of various shippers and manufacturers with the abilities and capacities of available carriers." An employee in shipper support is required to spend a minimum of twenty hours per week on the phone with customers in an effort to obtain freight to transport.

¶3. At the time of hire, employees in shipper support are given an employee handbook, which, among other things, outlines the twenty-hour telephone requirement. The employee must acknowledge receipt of the handbook in writing and acknowledge that he or she understands the terms thereof.[1] While warnings are not required, Black did receive warnings that he was not spending the required amount of time on the phone.[2]

¶4. Black was warned first by e-mail on January 21, 2020, and again in a face-to-face meeting with the owners of Vector, Joe Estes and Brian Estes, and Vector's human resources director, Leigh Buntin, on January 24. At that time Black was put on a sixty-day probationary period. On February 17, 2020, Joe Estes met with Black and seventeen other employees from shipper support to discuss lack of effort regarding the telephone requirement. Black was terminated on March 20, 2020, by Joe Estes, with Buntin present, for "consistent refusal to

---

[1] In its appellate brief, Vector explains that the handbook was created for this very situation because in prior years it had issues regarding employees failing to meet the telephone requirement. Employees "would be terminated for failure to meet the requirement and then collect unemployment, penalizing Vector for requiring employees to do what they were hired to do."

[2] Vector keeps phone timers on each extension; however, Black did not have regular access to this information. Instead, he tried to simply count his calls.

do his job."

¶5.    Black filed his initial claim for unemployment benefits on May 8, 2020, and was interviewed at that time by an MDES claims examiner. The records show that Buntin, as a representative of Vector, was interviewed by the claims examiner on May 18, 2020. In a notice mailed to Vector on July 2, 2020, MDES notified Vector of its initial determination that Black was eligible for benefits because Vector had not shown that Black was discharged for misconduct connected to the work.

¶6.    Vector appealed that decision, and a telephonic hearing was conducted by an MDES administrative law judge (ALJ) on September 11, 2020. Participating in the hearing were Black, Buntin, and Lee Durrett, general counsel for Vector. Buntin testified on behalf of Vector, and certain exhibits were admitted in support of Vector's contention that Black was terminated for misconduct connected to his work. Buntin testified that Black was made aware of Vector's expectations concerning his job duties, specifically the requirement that he be on the phone at least twenty hours per week soliciting customers. After several warnings, Buntin testified that Black was terminated because he "was just putting forth zero effort to stay on the phone because their one requirement is to be on the phone." Black admitted that he was aware of the duties of the job, including the twenty-hour-per-week phone requirement, at the time he was hired. Further, he admitted that he knew that failure to meet the phone requirement would jeopardize his employment. He conceded that he did not meet Vector's twenty-hour-per-week phone requirement.

¶7.    Both Black and the ALJ questioned Buntin as to whether any employee in shipper

3

support had met the twenty-hour requirement during the sixty weeks Black was employed by Vector. Buntin stated that she could not answer that question. From his conversations with management and others in shipper support, Black testified that no one even came close to the twenty-hour requirement while he was employed there. When asked by the ALJ why he could not meet the requirement, Black said it was because the requirement was unobtainable. The ALJ asked Black about other job duties. Black stated that in soliciting shippers he would have to "bid on lanes." When questioned by the ALJ as to what "bid on lanes" means, Black explained that customers would need to know what it would cost to move their freight. Black stated he would often have to communicate the costs through e-mails. Black also advised the ALJ that he spent significant time each day searching for customers to call. He said Vector did not provide him with a list, such that all he had to do was dial the numbers on the list. Instead, he had to find customers to call. Black described a computer program that was supposed to generate leads, but he stated it often produced the same lead multiple times a day. Black stated that the computer lead program did not work well. He estimated that he spent at least three hours a day on these other tasks. Black admitted that he never brought any of these issues up in his meetings with management. Black said that, based on his experience, he would be "shouted down" and would just be told to work harder if he tried to raise such issues with management.

¶8. In rebuttal, Buntin confirmed that Black never raised any of these concerns during his meetings with management. Buntin stated that each representative is given access to lists or zones they are responsible for, so they are not just randomly searching for customers. Buntin

4

said there was no need for Black to get on the internet to find customers. However, Black testified that he was urged by his team leader to search the internet for customers. Black stated that he tried his best every day that he walked into the office.

¶9. The ALJ rendered her opinion on September 23, 2020, affirming the initial determination that Black was entitled to unemployment benefits and finding that

> [t]he employer's right to terminate an employee is not being questioned. However, the employer has failed to provide evidence proving the claimant's failure to meet its expectations was due to any intentional neglect or intent. The employer has not shown the claimant was discharged for misconduct as that term is defined under the Law.

On October 2, 2020, Vector appealed the decision of the ALJ to the MDES Board of Review. The Board of Review rendered its decision on October 9, 2020, adopting the ALJ's findings of fact and opinion and affirming its decision.

¶10. On November 5, 2020, Vector filed its petition for judicial review of the MDES Board of Review's decision in the Lee County Circuit Court. On April 26, 2021, the circuit judge affirmed the decision of the Board of Review. It is from this decision that Vector appeals.

**STANDARD OF REVIEW**

¶11. In *Mississippi Department of Employment Security v. Jackson County*, 166 So. 3d 556, 558 (¶10) (Miss. Ct. App. 2015), our standard of review on appeal is described:

> We employ an abuse-of-discretion standard when reviewing a trial court's decision to affirm or reverse an administrative agency's findings. *McGee v. Miss. Emp't Sec. Comm'n*, 876 So. 2d 425, 427 (¶5) (Miss. Ct. App. 2004) (citation omitted). We must "review the record to determine whether there is substantial evidence to support the Board['s] . . . findings of fact, and further, whether, as a matter of law, the employee's actions constituted misconduct disqualifying him from eligibility for unemployment compensation." *Miss. Emp't Sec. Comm'n v. Berry*, 811 So. 2d 298, 301 (¶8) (Miss. Ct. App. 2001)

5

(citing *City of Clarksdale v. Miss. Emp't Sec. Comm'n*, 699 So. 2d 578, 580 (¶15) (Miss. 1997)).

## ANALYSIS

¶12.    An employee shall be disqualified from receiving unemployment benefits under the Mississippi Employment Security Law if he is discharged for misconduct connected to his work. Miss. Code Ann. § 71-5-513(A)(1)(b) (Supp. 2019). The burden of proof to show misconduct is on the employer. *Id.* § 71-5-513(A)(1)(c). The employer must prove misconduct connected to the work by substantial, clear and convincing evidence. *City of Grenada v. Miss. Dep't of Emp't Sec.*, 320 So. 3d 523, 526 (¶16) (Miss. 2021). In *City of Grenada*, 320 So. 3d at 525-26 (¶14), the supreme court repeated the longstanding definition of misconduct connected to the work as follows:

> In *Wheeler v. Arriola*, 408 So. 2d 1381, 1383 (Miss. 1982), this Court defined misconduct connected with work as follows:
>
>> **conduct evincing such willful and wanton disregard of the employer's interest as is found in deliberate violations or disregard of standards of behavior which the employer has the right to expect from his employee**. Also, carelessness and negligence of such degree, or recurrence thereof, as to manifest culpability, wrongful intent[,] or evil design, and showing an intentional or substantial disregard of the employer's interest or of the employee's duties and obligations to his employer, [come] within the term.
>
> *Id.* (citing *Boynton Cab Co. v. Neubeck*, 237 Wis. 249, 296 N.W. 636 (Wis. 1941) (addressing the meaning of the term under a similar unemployment compensation statute)).
>
> *Wheeler* further provides that
>
>> **[m]ere inefficiency, unsatisfactory conduct, failure in good performance as the result of inability or incapacity**, or

6

inadvertences and ordinary negligence in isolated incidents, **and good faith errors in judgment or discretion were not considered "misconduct" within the meaning of the statute.**

*Id*. (citing *Neubeck*, 296 N.W. at 636)).

(Emphasis added).

¶13.    After the Mississippi Supreme Court's 1982 decision in *Wheeler*, the MDES adopted the *Wheeler* definition of misconduct and produced the definition of misconduct in what is now section 308 of the Regulations of the MDES.[3] This Court recognized this connection in *Buller v. Mississippi Department of Employment Security*, 111 So. 3d 1276, 1279-80 (¶12) (Miss. Ct. App. 2013):

> After *Wheeler*, MDES adopted the *Wheeler* definition of misconduct and produced the following definition of misconduct in section 308 of its Unemployment Insurance Regulations:
>
> A. For purposes of . . . [s]ection 71-5-513, misconduct shall be defined as including but not limited to:
>
> > 1. The failure to obey orders, rules or instructions, or failure to discharge the duties for which an individual was employed;
> >
> > a. An individual found guilty of employee misconduct for the violation of an employer rule only under the following conditions:
> >
> > > i. the employee knew or should have known of the rule;
> > >
> > > ii. the rule was lawful and reasonably related to the job environment and performance; and

---

[3] It is important to note that the definition in section 308 was never meant to supplant the definition announced in *Wheeler* and that has been repeated in many cases since *Wheeler*. In fact, both *Wheeler* and section 308 are quoted in most appellate cases concerning misconduct connected to the work in unemployment compensation cases.

iii. the rule is fairly and consistently enforced.

2. A substantial disregard of the employer's interests or of the employee's duties and obligations to the employer;

3. Conduct which shows intentional disregard—or if not intentional disregard, utter indifference—of an employer's interests as is found in deliberate violations or disregard of standards of behavior which the employer has the right to expect of the employee; or

4. Carelessness or negligence of such degree or recurrence as to demonstrate wrongful intent.

**However, mere inefficiency, unsatisfactory conduct, failure to perform as the result of inability or incapacity**, a good faith error in judgment or discretion, or conduct mandated by a religious belief or the law **is not misconduct**. Conduct mandated by the law does not include court-ordered conduct resulting from a claimant's illegal activity; this may be considered misconduct.

(Emphasis added).[4] The issue presented here is whether Vector proved by substantial, clear, and convincing evidence that Black was terminated as a result of misconduct connected to the work he was hired to perform.

¶14.    Vector's position is clear. They have faced this exact issue before. In its "Statement of the Case" in its initial appellate brief, Vector states:

> *Over a decade ago, there were issues at Vector whereby employees would not do what they were hired to do. They would be terminated and then collect unemployment, thereby penalizing Vector for requiring employees to do what they were hired to do.* Consequently, Vector created its Employee Handbook and included the "Minimum Phone and Work Requirement" policy so there would be no ambiguity that 20 hours on the phone per week was a requirement

---

[4] Throughout these proceedings, Vector has failed to recognize this last paragraph of section 308 and how it firmly ties any application of section 308(A) to the *Wheeler* definition of misconduct.

of employment—not a goal, wish or expectation—but a requirement of employment. Vector intentionally created the "Minimum Phone and Work Requirement" policy and published the "Minimum Phone and Work Requirement" policy in the Employee Handbook. The Employee Handbook is provided to every employee and every employee is expressly made aware of the "Minimum Phone and Work Requirement" policy.

(Emphasis added). Vector admittedly created its employee handbook, which included the "Minimum Phone and Work Requirement," in an effort to correct what Vector believed to be an unfair result when faced with claims for unemployment benefits. Accordingly, during the telephonic hearing, Vector put on proof that

1. Black was informed of the policy at the time he was hired;

2. Black was warned that he was not in compliance with the policy;

3. Black was given an opportunity to come into compliance; and

4. Black continued to fail to meet the twenty-hour requirement and was terminated.

¶15.    Black admitted during the hearing that he knew the policy, that he was warned that his job would be in jeopardy if he did not improve his performance, and that he was terminated when he did not meet the requirement. Vector contends this admission, along with the proof it put on during the telephonic hearing, was clear and convincing evidence of Black's misconduct connected to the work he was hired to do, pursuant to the provisions of section 308(A)(1)(a); thus, Vector argues that Black should not be eligible for unemployment benefits. Vector argues that there was no need for the circuit court, Board of Review, and ALJ to further consider *Wheeler* and its definition of misconduct. However, as noted above, Vector fails to recognize that the concluding paragraph of section 308 still applies the

9

*Wheeler* definition to any determination of misconduct pursuant to section 308.

¶16. Black contends that the twenty-hour-per-week phone requirement was unobtainable and that no employee in shipper support even came close to meeting that requirement during the time he was employed there. Buntin did not dispute that claim.[5] As set forth above, Black explained why the twenty-hour-per-week requirement was unobtainable for him or any other employee in shipper support. Black testified that he did his best each day he came to work; however, Buntin described Black as putting forth "zero effort."

¶17. The exhibit introduced by Vector shows that Black made hundreds of phone calls each week, which would appear to be more than "zero effort." The report for the week of March 13, 2020, the week before he was terminated, shows that Black made 333 outgoing calls. Assuming a forty-hour work week, that is one call every 7.2 minutes. The report shows that he was on the phone that week for seven hours and eight minutes. The average call lasted 1.29 minutes, which means that Black had an average of 5.91 minutes to make whatever notes necessary from that call and then find the next customer to call.

¶18. The ALJ had to resolve the conflict in the evidence between Vector's contention that Black put forth "zero effort" to meet its requirements and Black's contention that he did his best each day. In her decision, the ALJ found that Black was making an effort to improve and that he tried his best to meet Vector's expectations. Further, the ALJ cited Mississippi Code Annotated section 71-5-513(A)(1)(b), which provides that an individual may be disqualified

---

[5] Although not specifically addressed in the ALJ's decision, this seems to show that Vector failed to prove, by clear and convincing evidence, that the twenty-hour-per-week phone rule is fairly and consistently enforced.

for benefits when discharged for misconduct. She also noted that section 71-5-513A(1)(c) provides that the employer has the burden to establish misconduct. She went on to describe how the Mississippi Supreme Court has defined "misconduct" in *Wheeler* and considered MDES Regulation 308, which defines misconduct. After consideration of the facts and appropriate law, the ALJ found:

> The employer discharged the claimant for unsatisfactory job performance. The claimant failed to meet the employer's expectations regarding meeting the employer's minimum telephone time required to solicit customers. The claimant was also warned about his performance.
>
> The employer's right to terminate an employee is not being questioned. However, the employer has failed to provide evidence proving the claimant's failure to meet its expectations was due to any intentional neglect or intent. The employer has not shown the claimant was discharged for misconduct as that term is defined under the Law.

¶19. In *Franklin Collection Service Inc. v. Mississippi Department of Employment Security*, 181 So. 3d 304, 307 (¶10) (Miss. Ct. App. 2015), we considered a similar fact pattern where an employee was terminated for "unwillingness to do her job." In that case the employee had quotas to meet, similar to the telephone requirement at Vector. Citing *Wheeler* and applying its standard, this Court held:

> In concluding [the employee] was not terminated for misconduct, the AJ and Board applied the correct legal definition of misconduct. But the AJ and Board simply found, as a factual matter, Franklin failed to meet its "burden of proving misconduct by substantial, clear, and convincing evidence." *Jackson Cnty. Bd. of Sup'rs [v. Miss. Emp't Sec. Comm'n]*, 129 So. 3d [178,] 183 (¶12) [(Miss. 2013)] (citing Miss. Code Ann. § 71-5-513(A)(1)(c); *Foster v. Miss. Emp't Sec. Comm'n*, 632 So. 2d 926, 927 (Miss. 1994)). So Franklin's real problem with the Board's decision has to do with its finding of fact, not its conclusion of law.

*Franklin Collection Serv.*, 181 So. 3d at 308-09 (¶17).

11

¶20.     Likewise, Vector's real issue here is its disagreement with the Board's findings of fact. The ALJ, Board of Review, and circuit court all found that Vector had failed to meet its burden of proof to show that Black was terminated for misconduct, as that term is defined above. The proof in this case was conflicting, just as in *Franklin*. Concerning this Court's role on appeal in such a case, in *Franklin*, 181 So. 3d at 309 (¶¶20-21) (citing *Jackson Cnty. Bd. of Sup'rs*, 129 So. 3d at 183-84 (¶¶15-16)), we reasoned:

> While we certainly may have weighed this evidence differently than the Board, our role is not to reevaluate the evidence to ask if [the employee's] low productivity resulted from misconduct. Rather, we ask—Is the Board's finding of no misconduct supported by substantial evidence? And after review, we find it is. The Board supported its decision with substantial evidence, namely, the testimony of [the employee], whose credibility was a matter for the Board—not this court—to decide. And "where there is substantial evidence, an agency's fact finding must be allowed to stand even though there might be room for disagreement on that issue."
>
> An employee's conduct may constitute grounds for termination, yet be insufficient to constitute misconduct disqualifying the claimant from unemployment benefits. The Board found [the employee's] low production justified termination—but not disqualification from unemployment benefits. As the Board supported its decision with substantial evidence, we must defer to this decision as conclusive.

(Citations and internal quotation marks omitted).

**CONCLUSION**

¶21.     Based upon the evidence presented, the ALJ found that Vector had not met its burden of proof to show that Black was terminated for misconduct connected to the work. The ALJ resolved the conflicts in the evidence in Black's favor and applied the correct legal standard. The Board of Review affirmed the ALJ's decision. The single issue in this appeal is whether the circuit court's opinion affirming the decision of the MDES Board of Review was contrary

12

to law, arbitrary or capricious, or not supported by substantial evidence.

¶22.  Because we find the correct legal standard was applied in this case, and given that the findings of the Board are supported by substantial evidence, we affirm the circuit court's judgment.

¶23.  **AFFIRMED.**

**CARLTON AND WILSON, P.JJ., GREENLEE, WESTBROOKS, McDONALD, LAWRENCE, McCARTY AND SMITH, JJ., CONCUR. BARNES, C.J., NOT PARTICIPATING.**