ON WRIT OF CERTIORARI

CHANDLER, Justice,
for the Court:
¶ 1. The Jackson County Board of Supervisors terminated June Seaman, and she applied to the Mississippi Employment Security Commission (MESC) for unemployment benefits. At the MESC, a claims examiner, an administrative-law judge, and the Board of Review determined that Seaman was entitled to unemployment benefits because Jackson County had failed to prove by clear and convincing, substantial evidence that Seaman had been terminated for misconduct. The Circuit Court of Jackson County affirmed the *180 agency’s decision. But the Court of Appeals reversed, finding that the employer had proven misconduct by substantial evidence. We granted the MESC’s petition for certiorari and hold that the Court of Appeals improperly reweighed the evidence before the MESC. Therefore, we reverse the judgment of the Court of Appeals and reinstate and affirm the judgment of the Circuit Court of Jackson County.

FACTS

¶ 2. The following facts were presented at a telephonic hearing before an administrative-law judge. Seaman worked in two capacities for Jackson County. She worked forty hours per week for the Jackson County Community Center as an administrative assistant to Jim Hart. She also worked as a carnival coordinator in her capacity as a member of the Jackson County Fair Association. The Fair Association organized the eight-day county fair every October. Seaman testified that she performed her fair work on nights and weekends. She submitted time sheets showing that she regularly worked thirty to forty hours per week for the fair during 2008-2009. Jackson County terminated Seaman, claiming that she could not have worked that many hours for the fair, and that she had falsified her time sheets, constituting misconduct disqualifying her for unemployment benefits under Mississippi Code Section 71-5-513(A)(l)(b) (Rev.2011).

A. Seaman’s fair work

¶ 3. Seaman testified that she had been with the fair association for twenty-six years and had worked as a carnival coordinator for fifteen years. She testified that she worked year-round to coordinate the fair. Her duties included submitting contracts to and coordinating with more than 100 vendors. This involved multiple phone calls and written correspondence. She testified that she spent hours on the phone discussing vendors with her Fair Association supervisor, Eddie Russell. She and Russell also coordinated meeting agendas for eight to ten Fair Association meetings per year. She contacted fifty to seventy-five schools per year. Before the fair, she made sure all contract labor was in place and that the barn and ticket office were ready. She worked with another Fair Association member to coordinate judges for various contests. After the fair, she typed and proofed the Fair Book, a project that took several weeks. She testified that, while she was allowed to perform fair work during her community-center job, her community-center job duties did not leave much time for fair work, so she did the bulk of it after hours. Seaman testified that no one else put in as much time preparing for the fair as she did.
¶ 4. Allen Smith, a member of the Fan-Board, disputed the amount of time Seaman legitimately could have spent on fair work. He testified that the Fair Board is a policymaker for the fair and oversees the Fair Association, which actually puts on the fair. Smith testified that he was familiar with the duties of a Fair-Association member. He testified that Seaman’s fair work was part-time and not year-round. Smith stated that, for the combined months of August, September, and October, Seaman should have worked only twenty to thirty hours total. In November, she should have worked fifteen to twenty hours in one two-week pay period. In January, February, and March, it was time to complete the Fair Book, requiring fifteen to twenty hours for all three months. In contrast with Seaman’s testimony, Smith testified that completion of the Fair Book merely required editing last year’s version. In April, her fair work should have taken five to ten hours. Smith testified that Seaman should have *181 had no fair work at all in the months of December, May, June, and July.

B. Seaman’s time sheets

¶ 5. Seaman was paid for both jobs every two weeks with a single check. Seaman submitted a time sheet to the payroll clerk every two weeks. Each time sheet showed she worked eighty hours for the community center, and had an additional amount labeled “miscellaneous pay” for her fair work. Hart, her community-center supervisor, initialed each time sheet. A separate time sheet for each two-week period recorded the hours Seaman had worked for the fair. Seaman’s fair supervisor, Russell, was supposed to initial this time sheet. Seaman testified that, because Russell was busy with another job, he gave her permission to sign his initials to her fair-work time sheets. Seaman admitted that she did not check with Russell about the amount of time she reported, stating that “he always knew that the fair would get done and he always told me just go ahead and handle it.”
¶ 6. Russell did not testify. Hart testified that, the times he cheeked Seaman’s time sheets before initialing them, he did not see any miscellaneous pay for fair work noted on the time sheets. He testified that, after he initialed each time sheet, Seaman delivered the time sheet to Human Resources. Hart testified that Seaman was permitted to perform some fair-association duties while working at the community center, but he was unfamiliar with what those duties were. The payroll clerk, Belinda Lamey, testified that the number of hours Seaman reported raised “a red flag,” and she reported the matter to her supervisor in 2003 or 2004. However, the matter was not investigated until 2008 or 2009.
¶ 7. In late 2008, Jackson County hired a private investigator to determine whether Seaman was spending the time she reported on fair work. The results of the investigation were inconclusive. On July 21, 2009, Janet Krebs, the human resources director, investigated the matter. Krebs testified that Russell denied having signed Seaman’s time sheets. Krebs testified that Russell told her that Seaman had asked him to he and say that he had signed the time sheets. In contrast, Seaman testified that she admitted to Krebs that she had signed the time sheets, but with Russell’s permission. Seaman was suspended pending further investigation. Jackson County hired a handwriting expert to analyze the time-card signatures, but the results of that analysis were not admitted into evidence. Krebs testified that Seaman was fired for falsifying time sheets, a terminable offense according to the employee handbook.

C. MESC’s decision

¶ 8. A claims examiner found that Seaman was entitled to unemployment benefits. On appeal, the administrative-law judge found that Jackson County had failed to prove misconduct by clear and convincing, substantial evidence. The administrative-law judge found Seaman’s testimony about her job duties to be more credible than Smith’s, stating:
The claimant seems to have done the bulk of coordinating for the annual fair for well over a decade. It seems to the ALJ that she would be the best witness to what her duties would entail, whereas Mr. Smith’s testimony is mostly speculative. It is possible the claimant is set in her ways and did not use technology ... efficiently in her duties. Inefficiency is a very different matter from purposely turning in falsified time sheets.
The administrative-law judge found that, although Seaman had been allowed to complete fair work at her community-center *182 job, she did not have time to do so, because her work for the community center regularly amounted to forty hours per week. The administrative-law judge recognized that Seaman had reported consistent hours for more than a year, but found that this consistency was circumstantial evidence of wrongdoing at best, because consistent hours may indicate that the worker is methodical and knows how long tasks will take. The administrative-law judge noted that the private investigator’s results had been inconclusive of fraudulent time-keeping. The administrative-law judge stated:
The ALJ concludes that the County’s case is mostly based on speculation as to whether her work for the Grounds truly took as much time as she submitted. That is not enough to be substantial evidence of wrong-doing. There is also the dispute as to whether her supervisor always actually signed her time-sheets, or whether they allowed her to sign in their place sometime[s]. The ALJ notes that the time-sheets are so consistent, the number of hours she submitted could have hardly come as a surprise to her supervisors. The claimant clearly and consistently testified that she believed she had been submitted [sic] her time-sheets properly.
¶ 9. Jackson County appealed to the MESC Board of Review, which affirmed and adopted the decision of the administrative-law judge.

D. Circuit Court and Court of Appeals decisions

¶ 10. The Jackson County Circuit Court found that the MESC’s decision was supported by substantial evidence, noting that Seaman had given a first-hand account of her job duties and an acceptable explanation of her time sheets. But the Court of Appeals reversed, finding that the facts clearly and convincingly established that Seaman had been terminated for misconduct. The Court of Appeals relied on Seaman’s time sheets, which reflected an “incredible and improbable number of hours worked by Seaman in light of her full-time employment elsewhere;” Russell’s hearsay statement to Krebs that Seaman had asked him to lie about having signed her time sheets; the fact that the employee handbook stated that falsifying time sheets is a terminable offense; and Seaman’s admission that she never checked with Russell before submitting her fair-work time sheets. In light of this evidence, the Court of Appeals found that the MESC arbitrarily and erroneously had determined that Jackson County’s case was based on speculation.

LAW AND ANALYSIS

¶ 11. A person is disqualified from receiving unemployment benefits “for the week, or fraction thereof, which immediately follows the day on which he was discharged for misconduct connected with his work, if so found by the department.” Miss.Code Ann. § 71-5-513(A)(l)(b) (Rev. 2011). This Court has defined “misconduct” as
conduct evincing such willful and wanton disregard of the employer’s interest as is found in deliberate violations or disregard of standards of behavior which the employer has the right to expect from his employee. Also, carelessness and negligence of such degree, or recurrence thereof, as to manifest culpability, wrongful intent or evil design, and showing an intentional or substantial disregard of the employer’s interest or of the employee’s duties and obligations to his employer, c[o]me within the term.
Wheeler v. Arriola, 408 So.2d 1381, 1383 (Miss.1982). However, “[m]ere inefficiency, unsatisfactory conduct, failure in good *183 performance as the result of inability or incapacity, or inadvertences and ordinary negligence in isolated incidents, and good faith errors in judgment or discretion [are] not considered ‘misconduct’ within the meaning of the statute.” Id. An employee’s conduct may constitute grounds for termination, yet be insufficient to constitute misconduct disqualifying the claimant from unemployment benefits. Acy v. Miss. Employment Sec. Comm’n, 960 So.2d 592, 595 (Miss.Ct.App.2007). This Court has determined that falsification of time cards constitutes misconduct under Section 71-5-513(A)(l)(b). Miss. Employment Sec. Comm’n v. Percy, 641 So.2d 1172, 1176 (Miss.1994).
¶ 12. The employer bears the burden of proving misconduct by substantial, clear, and convincing evidence. Miss.Code Ann. § 71-5-513(A)(l)(c) (Rev.2011); Foster v. Miss. Employment Sec. Comm’n, 632 So.2d 926, 927 (Miss.1994). This evi-dentiary standard requires proof beyond a mere preponderance of the evidence. Shannon Engineering & Const., Inc. v. Miss. Employment Sec. Comm’n, 549 So.2d 446, 450 n. 1 (Miss.1989).
¶ 13. On appeal of the decision of the MESC, “[a] rebuttable presumption exists in favor of the administrative agency and the challenging party has the burden of proving otherwise.” Miss. Employment Sec. Comm’n v. Harris, 672 So.2d 739, 743 (Miss.1996). All levels of judicial review focus on the decision of the MESC Board of Review, as that is the final decision of the agency. Miss.Code Ann. § 71-5-531 (Rev.2011). Mississippi Code Section 71-5-531 provides that, “[i]n any judicial proceedings under this section, the findings of the Board of Review as to the facts, if supported by evidence and in the absence of fraud, shall be conclusive, and the jurisdiction of said court shall be confined to questions of law.” Id.
¶ 14. We must not disturb the Board’s decision unless the decision “(1) is not supported by substantial evidence, (2) is arbitrary or capricious, (3) is beyond the scope or power granted to the agency, or (4) violates one’s constitutional rights.” Sprouse v. Miss. Employment Sec. Comm’n, 639 So.2d 901, 902 (Miss.1994). When a decision is supported by “such relevant evidence as reasonable minds might accept as adequate to support a conclusion,” it is supported by substantial evidence. Hooks v. George County, 748 So.2d 678, 680 (Miss.1999). “Substantial evidence” is “something less than a preponderance of the evidence but more than a scintilla or glimmer.” Hinds County v. Miss. Comm’n on Envtl. Quality, 61 So.3d 877, 885 n. 6 (Miss.2011) (quoting Miss. Dep’t of Envtl. Quality v. Weems, 653 So.2d 266, 280-81 (Miss.1995)). And a decision that is supported by substantial evidence is not arbitrary and capricious. Queen City Nursing Ctr., Inc. v. Miss. State Dep’t of Health, 80 So.3d 73, 78 (Miss.2011).
¶ 15. “Where there is substantial evidence, ‘an agency’s fact finding must be allowed to stand even though there might be room for disagreement on that issue.’ ” Hinds County School Dist. Bd. of Trustees v. R.B. ex rel. D.L.B., 10 So.3d 387, 395 (Miss.2008) (quoting Miss. Pub. Service Comm’n v. Merchants Truck Line, Inc., 598 So.2d 778, 782 (Miss.1992)). It is the role of the agency, in its expertise, to determine the weight of the evidence and the credibility of the witnesses. Merchants Truck Line, 598 So.2d at 782 (quoting State ex rel. Pittman v. Miss. Pub. Serv. Comm’n, 481 So.2d 302, 305 (Miss.1985)). An appellate court exceeds its authority if it reevaluates the evidence and “make[s] its own determination of the trustworthiness of some particular testimony.” Knight v. Public Employees’ Ret. *184 Sys., 108 So.3d 912, 916 (Miss.2012) (quoting Pub. Employees’ Ret. Sys. v. Cobb, 839 So.2d 605, 609 (Miss.Ct.App.2003)).
¶ 16. This standard of review is pivotal to our resolution of this appeal. Under our standard of review, even if there is evidence which would have supported a different result, we will not disturb a decision of the MESC that is supported by substantial evidence. Id. Thus, in reviewing the MESC’s decision in this case, this Court does not ask whether it believes that Seaman submitted false time sheets. Rather, the issue is whether substantial evidence supported the MESC’s decision that she did not do so, because it found the evidence submitted by Jackson County to be unconvincing.
¶ 17. We now determine whether the evidence supporting the MESC’s decision was substantial, that is, whether it constituted “such relevant evidence as reasonable minds might accept as adequate to support a conclusion.” Hooks, 748 So.2d at 680. The MESC relied most heavily on Seaman’s detailed testimony that her duties for the Fair Association were year-round and took thirty to forty hours per week. The MESC discounted Smith’s conflicting testimony, finding it to be speculative. This determination of the relative credibility of Seaman and Smith was supported by the fact that Smith never had worked for the Fair Association, the entity that put on the fair. Further, in contrast with Seaman’s detailed testimony, Smith provided few details about what Seaman’s job duties were and why they would have taken vastly less time than Seaman reported. The only specific information that he provided about her duties was that the fair book should have taken less time because Seaman should have edited last year’s version, rather than drafting an original document. But the MESC found this was evidence of Seaman’s inefficient use of technology, not her falsification of hours worked, and that Jackson County had failed to prove Seaman had not worked the hours she reported. While this Court may have reached a different conclusion as an original fact-finder, this was the type of reasonable weighing of conflicting evidence and determination of the witnesses’ credibility that is within the purview of the MESC to perform.
¶ 18. The MESC noted the conflicting testimony regarding the signatures on Seaman’s time sheets. Krebs testified to a hearsay statement from Russell that, during the investigation, Seaman had asked him to lie and say he had signed the time sheets. Hart testified that he initialed Seaman’s time sheets and he never saw any notations for “miscellaneous pay” for her fair work. Seaman testified that Russell had instructed her to sign his initials to her fair-work time sheets. The MESC relied on Seaman’s testimony, finding it supported by the facts that Seaman consistently had reported thirty to forty hours per week over one year and that the “the number of hours she submitted could have hardly come as a surprise to her supervisors.” This evidence substantially supported the MESC’s conclusion that Jackson County had failed to substantially, clearly, and convincingly prove that Seaman had falsified her time sheets.[1] Again, while this Court might have found otherwise, when substantial evidence exists, “an agency’s fact finding must be allowed to stand even though there might be room for disagreement on that issue.’ ” Hinds County Sch. Dist. Bd. of Trustees, 10 So.3d *185 at 395 (quoting Merchants Truck Line, 598 So.2d at 782).
¶ 19. Given the conflicting evidence before the MESC and the fact that Jackson County bore the burden of proof of misconduct by substantial, clear, and convincing evidence, we find that the ME SC’s decision that Jackson County did not prove misconduct was supported by substantial evidence and was not arbitrary and capricious. We note that, while the Court of Appeals disagreed, relying heavily on Russell’s statement that Seaman had asked him to lie, Russell’s statement constituted uncorroborated hearsay, and the MESC had no obligation to credit it. See Miss. Employment Sec. Comm’n v. McLane-Southern, Inc., 583 So.2d 626, 628 (Miss.1991). We find that the Court of Appeals erred by reevaluating the evidence and substituting its judgment for that of the MESC. We reverse the judgment of the Court of Appeals and reinstate and affirm the judgment of the Circuit Court of Jackson County.
¶ 20. THE JUDGMENT OF THE COURT OF APPEALS IS REVERSED. THE JUDGMENT OF THE CIRCUIT COURT OF JACKSON COUNTY IS REINSTATED AND AFFIRMED.
WALLER, C.J., DICKINSON, P.J., LAMAR, KITCHENS, KING AND COLEMAN, JJ., CONCUR.
RANDOLPH, P.J., CONCURS IN RESULT ONLY WITH SEPARATE WRITTEN OPINION JOINED BY PIERCE, J.

. While Seaman’s admitted signing of her supervisor's initials to her time sheets was a form of falsification, the MESC's finding that she was directed to do so by her supervisor substantially supports its conclusion that Jackson County did not prove misconduct.