## IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

### NO. 2013-CC-00689-COA

**TAMEKA GLADNEY**                                                  **APPELLANT**

**v.**

**MISSISSIPPI DEPARTMENT OF**                     **APPELLEE**
**EMPLOYMENT SECURITY**

| | |
|---|---|
| DATE OF JUDGMENT: | 03/27/2013 |
| TRIAL JUDGE: | HON. PAUL S. FUNDERBURK |
| COURT FROM WHICH APPEALED: | MONROE COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANT: | TAMEKA GLADNEY (PRO SE) |
| ATTORNEYS FOR APPELLEE: | ALBERT B. WHITE |
| | LEANNE FRANKLIN BRADY |
| NATURE OF THE CASE: | CIVIL - STATE BOARDS AND AGENCIES |
| TRIAL COURT DISPOSITION: | AFFIRMED THE MISSISSIPPI DEPARTMENT OF EMPLOYMENT SECURITY'S DECISION TO DENY BENEFITS |
| DISPOSITION: | REVERSED AND RENDERED - 09/09/2014 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

### BEFORE LEE, C.J., BARNES AND FAIR, JJ.

### BARNES, J., FOR THE COURT:

¶1. The Mississippi Department of Employment Security (MDES) denied Tameka Gladney unemployment benefits after it determined she voluntarily quit her job without good cause. The circuit court affirmed. We find substantial evidence shows Gladney did not voluntarily quit, but was part of a reduction in force (RIF). Thus, we reverse and render the decision of the circuit court and MDES, and we reinstate Gladney's unemployment benefits.

### FACTS AND PROCEDURAL HISTORY

¶2.    Gladney was employed as a full-time teacher's assistant with the Aberdeen School District. In May 2012, at the end of the school year, the school principal, Angela Irvin, held a meeting and told all the teacher's assistants she needed to lay off two people. She asked for volunteers. Gladney was the first to volunteer. After a second person volunteered, there was "a little drama" because others had wanted to volunteer. Regardless, Principal Irvin told Gladney and the second volunteer to write a letter by lunchtime stating they would not return the following year due to lack of funds in the school district.

¶3.    Before writing the letter, Gladney asked if the pre-kindergarten room where she worked would reopen the next school year. Principal Irvin said no; the room would be closed, and the main teacher for that classroom would not be returning. Gladney also called the school's conservator, Bob Strebeck, and asked him if writing the letter would make "it look like [she] was walkin' away from [her] job or [she] was quitting or anything like that." He said no: "[I]t will not look like you [are] walkin' away from your job. You can always come back to the district and get a job." He also stated that he "appreciate[d] [her] steppin' up to the plate for the district."

¶4.    Gladney submitted her letter on May 16, 2012, stating: "I, Tameka Gladney[,] will not be returning back to the Aberdeen School District in the school year of August 2012-2013 due to **Lack of Funds** in the Aberdeen School District. I will be returning to college in the upcoming year." (Emphasis in original). The following day, Principal Irvin announced that because "so much drama" had ensued after she asked for volunteers, she would choose the two employees to lay off. Gladney was not one of the two employees

chosen, but Gladney was not asked or told to withdraw her letter. Her last day of work was May 25, 2012.

¶5.     On June 8, 2012, Gladney filed for unemployment benefits. Although the school district initially agreed with Gladney that she was part of the RIF, it later changed its position and challenged her claim. After review, the MDES claims examiner denied benefits, finding that Gladney had voluntarily quit without good cause. The claims examiner also ordered Gladney to repay the $1,158 in benefits she received before the decision was made. Gladney appealed. The MDES administrative law judge (ALJ) held a telephonic hearing, after which she affirmed the claims examiner's decision. The MDES Board of Review affirmed the decision as well. Gladney appealed to the Monroe County Circuit Court, which also affirmed the denial of benefits. Gladney now appeals to this Court.

## STANDARD OF REVIEW

¶6.     "The scope of review in an unemployment-compensation case is limited. Absent fraud, the findings of fact of the Board of Review are conclusive if supported by substantial evidence." *Brown v. Miss. Dep't of Emp't Sec.*, 29 So. 3d 766, 769 (¶7) (Miss. 2010). "A rebuttable presumption exists in favor of the administrative agency, and the challenging party has the burden of proving otherwise." *Sprouse v. Miss. Emp't Sec. Comm'n*, 639 So. 2d 901, 902 (Miss. 1994).

## DISCUSSION

¶7.     Under Mississippi Code Annotated section 71-5-513A(1)(a) (Supp. 2013), an employee who "le[aves] work voluntarily without good cause" is not entitled to

3

unemployment benefits. Further, an employee who is later found to be ineligible for benefits must repay any unemployment benefits received. Miss. Code Ann. § 71-5-19(4)(a)-(b) (Supp. 2013). Gladney argues she is entitled to unemployment benefits because she did not leave work voluntarily without good cause, but was part of a RIF. "[T]he question of whether an employee voluntarily quits or was discharged is a question of fact for the [MDES] to determine." *Huckabee v. Miss. Emp't Sec. Comm'n*, 735 So. 2d 390, 394 (¶14) (Miss. 1999).

¶8.    It is undisputed that Gladney initially agreed to be part of the school district's RIF. Gladney volunteered for the RIF; she submitted a letter stating she would not return the following school year due to "lack of funds" in the school district; and the school accepted her letter. She was thanked by the school's conservator for volunteering. Later, however, Principal Irvin announced that she had changed her mind about accepting volunteers and would choose the two employees to lay off. The ALJ found that when Principal Irvin made this announcement, the volunteer option went away. At this point, according to the ALJ, Gladney had two choices: (1) rescind her letter, or (2) not rescind her letter and, in effect, voluntarily quit. The ALJ found that because Gladney did not rescind her letter, it was her intention to voluntarily quit in order to attend college in the fall. The ALJ also found that Gladney quit while other positions were available. Although Gladney's position would not be renewed and her classroom was closing, the ALJ found Gladney could have possibly worked elsewhere in the school district. Thus, unemployment benefits were denied.

¶9.    To affirm the MDES's denial of benefits, we must find its decision was supported by

4

substantial evidence and was not arbitrary or capricious. *Bedford Care Ctr. v. Kirk*, 935 So. 2d 1135, 1138 (¶9) (Miss. Ct. App. 2006). "Substantial evidence is that which is relevant and capable of supporting a reasonable conclusion, or is 'more than an scintilla of evidence.'" *Id.* at (¶10) (quoting *Gilbreath v. Miss. Emp. Sec. Comm'n*, 910 So. 2d 682, 686 (¶13) (Miss. Ct. App. 2005)). "[A] decision that is supported by substantial evidence is not arbitrary and capricious." *Jackson Cnty. Bd. Sup'rs v. Miss. Emp't Sec. Comm'n*, 129 So. 3d 178, 183 (¶14) (Miss. 2013). Factual findings are left to the MDES's discretion, as "[i]t is the role of the agency, in its expertise, to determine the weight of the evidence and the credibility of the witnesses." *Id.* at (¶15).

¶10.   Substantial evidence does not support the MDES's finding that Gladney voluntarily quit her job without good cause. The basic facts of this case are undisputed. After accepting Gladney's letter, which stated Gladney would not return due to the school district's lack of funds, the principal changed her mind about taking volunteers. The principal chose the two employees to lay off, and Gladney was not chosen. But the fact remains that when the principal decided not to allow volunteers, she had already accepted Gladney's letter. We find that once Gladney's letter was accepted, it was too late for the principal to change her mind without informing Gladney that her letter would thereafter be considered a voluntarily departure if it were not withdrawn. Gladney remained under the impression she was part of the RIF. This understanding was confirmed by the school's payroll clerk after Gladney filed for unemployment benefits. Gladney's last day of work was May 25, 2012, and she filed for unemployment benefits on June 8, 2012. On June 13, 2012, the payroll clerk responded to

a MDES "Request for Information" form, in which the clerk stated the reason for Gladney's separation was a "RIF"/"lack of work." The ALJ recognized this in her findings, which state: "The employer's first response to the request for separation information was that the reason for the job separation was a reduction in force due to a lack of funds. Later the employer asserted that the claimant voluntarily resigned." Thus, even based on the school's own understanding at the time Gladney filed for unemployment benefits, Gladney was part of the RIF. It was not until the claim was before the claims examiner that the school asserted Gladney voluntarily quit. The MDES's finding that Gladney was not part of the RIF is not supported by the evidence.

¶11. Also, the MDES's finding that Gladney chose to quit to return to college is without any basis in the evidence. Although Gladney wrote in her letter that she would "be returning to college in the upcoming year," there is no indication in the record that it was Gladney's intention to quit work to return to college. Gladney stated that she had attended night classes in the past while working and that she could continue to do so. Gladney was adamant that she needed a job and would have continued working at the school if not for the RIF. The MDES's finding that Gladney voluntarily quit to return to college is not supported by substantial evidence.

¶12. Likewise, we cannot find substantial evidence to support the MDES's finding that Gladney could have worked elsewhere in the school district. Gladney testified she had worked for the school district for seven years and would continue to do so if work was available. Gladney was told her pre-kindergarten class was closing, and the classroom's

6

main teacher was not returning. Gladney asked Principal Irvin if the school would have another pre-kindergarten class in the fall to replace hers. Principal Irvin said no, leading Gladney to believe there would be no employment available for her. The ALJ found that "[a]lthough [Gladney's] specific classroom closed, the principal did *not* say that work was *not* available elsewhere in the district." (Emphasis added). We cannot find the principal's nondisclosure amounts to substantial evidence that other positions were available. This is speculation, at best.

¶13. We liken the school district's actions to a "bait and switch," for which Gladney should not be penalized. Gladney was led to believe she was part of the RIF once she turned in her letter. She was never told her letter was rejected or asked to withdraw the letter. The district, through its payroll clerk, confirmed Gladney's impression that she was still part of the RIF even after the principal's announcement that she would choose the two employees to lay off. Because there is not substantial evidence to support the MDES's decision, we reverse and render the denial of unemployment benefits and the order demanding that Gladney repay $1,158. Gladney's unemployment benefits shall be reinstated.

¶14. **THE JUDGMENT OF THE MONROE COUNTY CIRCUIT COURT IS REVERSED AND RENDERED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLEE.**

**LEE, C.J., IRVING, P.J., ISHEE, ROBERTS, MAXWELL, FAIR AND JAMES, JJ., CONCUR. GRIFFIS, P.J., AND CARLTON, J., DISSENT WITHOUT SEPARATE WRITTEN OPINION.**

7