# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2019-CP-01321-COA

**TIMOTHY WOODS**                                                                   **APPELLANT**

**v.**

**MISSISSIPPI DEPARTMENT OF**                                          **APPELLEES**
**EMPLOYMENT SECURITY AND WORLD**
**ENERGY NATCHEZ**

DATE OF JUDGMENT:            08/06/2019
TRIAL JUDGE:                        HON. DEBRA W. BLACKWELL
COURT FROM WHICH APPEALED:   ADAMS COUNTY CIRCUIT COURT
ATTORNEY FOR APPELLANT:      TIMOTHY WOODS (PRO SE)
ATTORNEY FOR APPELLEES:      ALBERT B. WHITE
NATURE OF THE CASE:          CIVIL - STATE BOARDS AND AGENCIES
DISPOSITION:                 AFFIRMED - 03/16/2021
MOTION FOR REHEARING FILED:
MANDATE ISSUED:

### BEFORE WILSON, P.J., LAWRENCE AND McCARTY, JJ.

### LAWRENCE, J., FOR THE COURT:

¶1.     Timothy Woods appeals pro se from the Adams County Circuit Court's judgment

affirming the decision of the Mississippi Department of Employment Security's Board of

Review (Board) to deny him unemployment benefits.  Woods claims the Board's decision

was not supported by substantial evidence and was arbitrary and capricious.  After review,

we find no error and affirm.

## FACTS AND PROCEDURAL HISTORY

¶2.     Woods was employed by World Energy Natchez (World Energy) from September 1,

2016, until November 5, 2018, as a plant operator.  He was discharged after his fifth violation

of sleeping on the job. On November 11, 2018, he filed for unemployment insurance benefits with the Mississippi Department of Employment Security (MDES). A claims adjudicator from MDES investigated the claim by interviewing Woods. Woods claimed that he was discharged for requesting a raise and filing a complaint about a co-worker and restroom conditions. World Energy did not provide any separate information. On November 29, 2018, the claims adjudicator determined that World Energy failed to show Woods was discharged for misconduct connected to his work, and therefore Woods was entitled to benefits.

¶3. On December 3, 2018, World Energy appealed the decision to an Administrative Law Judge (ALJ). The ALJ scheduled a telephonic hearing for December 20, 2018, at 1:30 p.m. and mailed World Energy and Woods instructions on how to participate. On the day of the hearing, the ALJ called Woods three times, and each call immediately went to Woods's voicemail. The ALJ then called World Energy's representative Josette Pierre-Louis, who answered. The ALJ informed Pierre-Louis that he made several attempts to contact Woods but was unsuccessful. At that point, the telephonic hearing proceeded without Woods.

¶4. Pierre-Louis testified that Woods worked for World Energy as a plant operator and that "his job require[d] him to be alert at all times." She explained that "the plant [processes] biodiesel and . . . if you have an accident it can take a whole city block so it's very important that people are alert as a plant operator . . . ." Pierre-Louis stated that Woods was discharged on November 5, 2018, because he was caught sleeping on the job on "multiple occasions." The most recent occasion occurred on November 2, 2018, when a chief engineer caught

2

Woods sleeping. In the six months leading up to this instance, Woods received two verbal warnings followed by two written warnings for sleeping on the job. Pierre-Louis explained that the company's standard procedure was to issue warnings before terminating an employee. World Energy included its standard procedures in a written handbook, which was given to all employees. Pierre-Louis testified that all employees were required to acknowledge they received and read the handbook.

¶5. On December 26, 2018, the ALJ issued a decision reversing Woods's award of unemployment benefits. In doing so, the ALJ determined that Woods was disqualified from receiving benefits in accordance with Mississippi Code Annotated section 71-5-513(A)(1)(b) (Supp. 2012) because he engaged in misconduct connected to his work, namely sleeping on the job. Woods appealed to the Board, which affirmed the ALJ's ruling. Woods then appealed to the circuit court, which found that the Board's decision was supported by substantial evidence and was not arbitrary or contrary to law.

## STANDARD OF REVIEW

¶6. "[T]he findings of the Board of Review as to the facts, if supported by evidence and in the absence of fraud, shall be conclusive, and the jurisdiction of the court shall be confined to questions of law." Miss. Code Ann. § 71-5-531 (Supp. 2012). Thus, this Court "must not reweigh the facts of the case or insert its judgment for that of the agency." *Allen v. Miss. Emp. Sec. Comm'n*, 639 So. 2d 904, 906 (Miss. 1994).

¶7. "An agency's conclusions must remain undisturbed unless the agency's order: (1) is not supported by substantial evidence, (2) is arbitrary or capricious, (3) is beyond the scope

or power granted to the agency, or (4) violates a statutory or constitutional right of the complaining party." *Miss. Dep't of Emp. Sec. v. Good Samaritan Pers. Servs.*, 996 So. 2d 809, 812 (¶6) (Miss. Ct. App. 2008). "[A] rebuttable presumption exists in favor of the administrative agency[,]" and Woods "has the burden of proving otherwise." *Jackson Cnty. Bd. of Sup'rs v. Miss. Emp. Sec. Comm'n*, 129 So. 3d 178, 183 (¶13) (Miss. 2013) (quoting *Miss. Emp. Sec. Comm'n v. Harris*, 672 So. 2d 739, 743 (Miss. 1996)).

## ANALYSIS

¶8.     Woods is disqualified from receiving unemployment benefits if "he was discharged for misconduct connected with his work, if so found by [MDES]." *See* Miss. Code Ann. § 71-5-513(A)(1)(b). "The employer bears the burden of proving misconduct by substantial, clear, and convincing evidence." *Jackson Cnty. Bd. of Sup'rs*, 129 So. 3d at 183 (¶12). The Mississippi Supreme Court has defined "misconduct" as

> conduct evincing such willful and wanton disregard of the employer's interest as is found in deliberate violations or disregard of standards of behavior which the employer has the right to expect from his employee. Also, carelessness and negligence of such degree, or recurrence thereof, as to manifest culpability, wrongful intent[,] or evil design, and showing an intentional or substantial disregard of the employer's interest or of the employee's duties and obligations to his employer, [come] within the term.

*Wheeler v. Arriola*, 408 So. 2d 1381, 1383 (Miss. 1982) (other brackets omitted). "Mere inefficiency, unsatisfactory conduct, failure in good performance as the result of inability or incapacity, or inadvertences and ordinary negligence in isolated incidents, and good faith errors in judgment or discretion [are] not considered 'misconduct' within the meaning of the statute." *Id*.

¶9. In the present case, the Board adopted the ALJ's findings of fact and ruling, which held that Woods's failure to comply with World Energy's policy after being warned constituted "misconduct" within the meaning of section 71-5-513(A)(1)(b). The ALJ explained that Woods had received two verbal warnings and two written warnings for sleeping on the job and was ultimately discharged for his fifth violation. Upon review, we find that the Board applied the correct definition of misconduct, and its finding that Woods had committed misconduct is supported by substantial evidence and is not arbitrary or capricious or contrary to law. *See, e.g., Ray v. Bivens*, 562 So. 2d 119 (Miss. 1990) (affirming agency's decision to deny employee unemployment benefits pursuant to section 71-5-513(A)(1)(b), finding that his repeated instances of sleeping on the job constituted misconduct). Accordingly, we affirm.

¶10. **AFFIRMED.**

**BARNES, C.J., CARLTON AND WILSON, P.JJ., GREENLEE, McDONALD, McCARTY AND SMITH, JJ., CONCUR. WESTBROOKS, J., CONCURS IN RESULT ONLY WITHOUT SEPARATE WRITTEN OPINION. EMFINGER, J., NOT PARTICIPATING.**